### ANDERSEN v. BERLIN MILLS CO.

(Circuit Court of Appeals, First Circuit. July 19, 1898.)

No. 209.

MASTER AND SERVANT—DANGEROUS MACHINERY—NOTICE.

A boy 20 years old, employed in a sawmill, went on a personal errand to a part of the mill where his duties did not require him to be. While there he attempted to step over a revolving shaft, whose top was 28½ inches from the floor, when his apron caught in the roughened and projecting head of a spline key, which held a small pulley on the shaft, and he was drawn upon the shaft and injured. He testified that he knew of the danger from the shaft, and lifted his apron to avoid it, but did not know nor think of the spline key. *Held*, that as the injury occurred under conditions not created by the mill owner, who had no reason to anticipate the presence of the boy near the shaft, or his conduct in lifting his apron high enough to avoid the shaft, but not the spline key, there could be no recovery.

In Error to the Circuit Court of the United States for the District of New Hampshire.

This was an action at law by Peter Andersen, by his next friend, Hans Haakensen, against the Berlin Mills Company, to recover damages for personal injuries. In the circuit court a verdict was direct-

ed for defendant, and judgment entered accordingly, to review which the plaintiff sued out this writ of error.

Edward C. Niles (Harry G. Sargent, Daniel J. Daley, and Herbert L. Goss, on brief), for plaintiff in error.

Robert N. Chamberlin and Irving W. Drew, for defendant in error.

Before PUTNAM, Circuit Judge, and WEBB and BROWN, District Judges.

BROWN, District Judge. This is an action of the case for personal injuries received by Peter Andersen from a revolving shaft in the defendant's sawmill. The plaintiff at the time of the injury was a minor about 20 years of age, and was employed by the defendant in its sawmill. The shaft that inflicted the injury was at a place in the sawmill where the plaintiff was not required to go by any duty of his employment, or for any reason connected therewith, or for ingress or egress. The plaintiff, wearing an apron of bagging coming about to his knees, was in the act of stepping over the moving shaft, the top of which was at a height of 28½ inches from the floor, when his apron caught, and he was drawn upon the shaft, where he received serious injuries. At the close of the plaintiff's evidence, a verdict for the defendant was directed by the circuit court. The present writ of error raises the question, was there error in the direction of a verdict?

It appears in evidence that the plaintiff was fully aware of the general danger from stepping over the revolving shaft, and of the risk that his apron might be caught. He testifies as follows:

"Q. Before your clothes were caught on the shaft did you put your hands onto the posts? A. I took hold of that apron, and hoisted that up, because I saw the shaft was running around. Q. Did you see the shaft running, and then lift up your apron? A. Yes, sir. Q. What did you do that for? A. I knew if it took hold of my clothes I might get hurt. Q. You knew if it caught you it was likely to kill you? A. Yes, sir. I didn't know if there was a pulley on it or not. But it didn't make any odds; I thought it could take hold. Q. You knew if that shaft caught your clothing it would hurt you? A. I knew I would lose my clothes. Q. And you took hold of it and pulled it up so it would not catch? A. Yes, sir. Q. And you knew if it caught you, you were liable to get hurt? A. I think I did. Q. And then you passed along towards the shaft? A. Yes, sir. Q. Did you know it was running? A. Yes, sir; I saw it was running. Q. Did you think whether it was dangerous to go over there? A. I didn't think of that. I thought so much of it that I lifted up my apron. Q. Why did you lift up the apron? A. Because I was afraid the shaft would take hold of it. Q. And you decided on the whole, after lifting up your apron, you would go over; that is, you thought with your apron lifted it would be safe? A. Yes, sir. Q. Did you think of that at the time? A. Yes, sir; because I had been over there before. Q. The question is whether you thought of it there on the spot. A. That is pretty hard to tell, so I can't say anything about it. Q. But you remember of lifting the apron? A. Yes, sir. Q. Did you think the pulley might catch your apron? A. I didn't think of the pulley, but I thought of the shaft. I had so much common sense that I was afraid it would catch my apron."

It is contended, however, that besides the danger known to the plaintiff was another unknown to him, namely, a "spline key," or small bar of steel used to fasten a pulley to the shaft. This spline key, instead of fitting closely into a slot in the hub of the pulley and into a slot in the side of the shaft, projected somewhat above the

88 F.—60

shaft, and its head, by pounding, had become rough and feathered. The plaintiff testified that this spline key caught his apron, and drew him upon the shaft. For our present inquiry we must assume this to be the fact.

Since the danger of the situation, other than the particular danger from the spline key, was fully known and appreciated by the plaintiff, and since a failure to give warning of dangers, fully known and appreciated, cannot be a ground for liability, it follows that the sole question in the case is, did the defendant, by allowing the spline key to remain upon the shaft in the condition disclosed by the evidence, and by failing to give warning thereof, violate any duty owed to the plaintiff? The plaintiff's counsel quote Railroad Co. v. Jones, 95 U. S. 442, "The duty is dictated and measured by the exigencies of the occasion;" and from Roth v. Depot Co. (Wash.) 43 Pac. 641, "Precaution is a duty only so far as there is any reason for apprehension." We are of the opinion that, even should we concede to the plaintiff, for the purposes of this case, the broad and unqualified statement "that, so far as there exist reasonable grounds for apprehending danger, a duty arises to take precaution against it," this would not avail the plaintiff. Upon the facts of the present case, we think it clear that the court would feel compelled to reverse the verdict of a jury holding that the circumstances prior to the accident gave rise to a reasonable apprehension of the occurrence from which the plaintiff suffered.

Recurring to the evidence, we find, first, that none of the duties for which the plaintiff was employed required him to be near the shaft. As was said by the circuit court in granting the motion to direct a verdict:

"No duty involved in the employment required the plaintiff to go to the place where he was injured. The plaintiff voluntarily left the place of duty, and went to another part of the mill, some ninety odd feet distant. He went for private purposes, and private purposes not incident to the employment. * * * The plaintiff's evidence shows that he voluntarily journeyed away from the place of employment to borrow money on his own account."

Such departure from the place and purposes of the employment has in many cases been held to absolve the master from liability. But even should we hold that, in the exercise of reasonable care, a master is bound to anticipate a certain amount of visiting among his employés, and should we say that the master ought to have foreseen that men were likely to be in the vicinity of the shaft for their own purposes, this would be insufficient to hold the defendant liable.

To complete a case for the plaintiff, it would next be necessary to hold that the master should have foreseen that one who knew the general danger from the moving shaft and pulley might undertake to step over a shaft 28½ inches high, wearing an apron, which he would lift only just high enough to narrowly clear the shaft, unless he were warned that, to pass over safely, he must lift it an inch or two higher. It should also be observed that the pulley which was attached to the shaft by the spline key was six inches in diameter. Unless the apron were dropped below the circumference of the

pulley, and within a very short distance from the side of the pulley, it could not be caught by the spline key.

We are of the opinion that, even if the defendant had reason to suppose that the plaintiff might possibly undertake to step over the shaft, there was no reason to suppose that knowledge of the condition of the spline key would influence his method of doing it, or that, knowing the general danger, the plaintiff would avoid it by so narrow a margin as to encounter the special danger which, if not comprehended within the general danger, was at least so closely connected thereto as not to become a special object of consideration.

In Rooney v. Cordage Co., 161 Mass. 153, 36 N. E. 789, where the plaintiff was caught by a set screw, the court said:

"The collar and set screw did not project much beyond the pulley and belt, but were almost in their line of motion. Although the plaintiff says he did not know of the set screw, his testimony shows that he was well aware of the danger from the moving pulleys, belt, and shaft," etc.

As was said by this court in Keats v. Machine Co., 13 C. C. A. 221, 65 Fed. 940:

"The rule laid down in cases where employés are set at work in positions of unusual and concealed danger is not applicable to the present case."

Further, as stated in Pollock on Torts (Ed. 1887, p. 572):

"In estimating the probability of danger to others we are entitled to assume, in the absence of anything to show to the contrary, that they have the full use of the common faculties, and are capable of exercising ordinary caution."

As the injury was received under conditions not brought about by the defendant, who had no reason to anticipate the presence of the plaintiff near the shaft, save that possibly he might go there for his own purposes, and as a consequence of conduct on the part of the plaintiff in stepping over the shaft which could not reasonably be anticipated, we are of the opinion that the plaintiff failed entirely to show the breach of any duty of the defendant, owed to the plaintiff in consequence of the relation of master and servant, or in consequence of any obvious peril to persons occupying the position of bare licensees.

The judgment of the circuit court is affirmed, and the defendant in error will recover its costs in this court.