

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 6 2017
~~~~~~~ C.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on July 6, 2017

~~~~~~~
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DILLON SMELSER, individually, and DERRICK SMELSER, a minor child, by and through his parent/guardian, MARIA SELPH, | ) ) ) ) ) | No. 93076-7 |
| Petitioners, | ) ) ) | |
| v. | ) ) | En Banc |
| JEANNE PAUL and "JOHN DOE" PAUL, individually and the marital community comprised thereof, and RONALD SMELSER, individually, | ) ) ) ) ) ) | |
| Respondents. | ) ) | Filed     JUL 0 6 2017 |

JOHNSON, J.—This case concerns the intersection of the doctrine of parental immunity with the system of proportionate liability under chapter 4.22 RCW. Two-year-old Derrick Smelser was run over while playing in his yard by a car driven by the defendant, Jeanne Paul. At trial, Paul was allowed to assert an affirmative defense that the child's father was partially at fault based on negligent supervision of the child. Instructed under RCW 4.22.070, the jury determined the father was 50 percent at fault. However, the trial court refused to enter judgment

against the father based on the parental immunity doctrine. The result was that the child's recovery against the driver was reduced by 50 percent. The Court of Appeals affirmed. *Smelser v. Paul*, noted at 193 Wn. App. 1014, *review granted*, 186 Wn.2d 1002, 380 P.3d 453 (2016). We reverse and hold that under chapter 4.22 RCW and our case law, no tort or fault exists based on the claim of negligent supervision by a parent.

## FACTS AND PROCEDURAL HISTORY

When he was two years old, Derrick[1] was playing in his father, Ronald Smelser's, driveway. Respondent Paul, the father's then girlfriend, had been visiting and had parked her truck in the driveway. As Paul started to drive away, she hit Derrick, who "was pulled under the vehicle and dragged for a distance," and suffered severe injuries. Clerk's Papers (CP) at 300. Derrick's father was home at the time but did not witness the accident. Derrick's five-year-old brother did witness the accident, and when the father heard Derrick's brother, Dillon, screaming, he looked in that direction and saw Derrick under Paul's truck.

This lawsuit was brought on behalf of Derrick against Paul based on negligence. Paul admitted the basic facts of the accident, but asserted as an affirmative defense that Derrick's father (who was not named as a defendant in the original complaint) was either partially or entirely responsible for the injuries

---

[1] We refer to Derrick by his first name for clarity.

based on a theory of negligent supervision. Derrick moved for summary judgment, arguing that no apportionment of fault to the father was allowable as a matter of law. The court denied summary judgment. Derrick thereafter amended his complaint to include the father as a defendant. The amended complaint did not allege that the father was negligent or otherwise at fault in any way, but stated only that "Defendant Paul also contends that Defendant Ronald Smelser was concurrently negligent and/or engaged in willful misconduct which was a proximate cause of Plaintiffs' injuries." CP at 301. The father never appeared as a party in the suit, and the court entered an order of default against him.

The case proceeded to a jury trial. Although the father had never appeared as a party, he was called as a witness. Derrick's theory of the case was that Paul was the only one who was negligent, that her negligence was the sole proximate cause of Derrick's injuries, and that the jury was instructed that Derrick had the initial burden of proving that Paul was negligent and had caused his injuries. The jury was also instructed to then consider whether Paul had met her burden of proving, as an affirmative defense, that the father was also negligent. The jury was permitted to apportion fault to the father only if Paul met her burden of proof.

The jury found that both Paul and the father were negligent and that both proximately caused Derrick's injuries. On a special verdict form, the jury attributed 50 percent of the damages to Paul and 50 percent to the father. Paul proposed the

3

court enter a judgment against her only for the 50 percent of damages apportioned to her by the jury. Derrick objected, proposing that "a 'joint and several' Judgment be entered against both Jeanne Paul and Ronald Smelser for the entire amount of Derrick's damages." CP at 1669. Paul, however, argued that a judgment could not be entered against the father due to parental immunity, and noted that joint and several liability is allowed only where there are two or more "defendants against whom judgment is entered." RCW 4.22.070(1)(b); CP at 1671.

The court entered judgment as proposed by Paul for 50 percent of the damages found by the jury. It did not enter any judgment against the father. The Court of Appeals affirmed. We granted review.

ISSUE

Whether, consistent with the parental immunity doctrine, a parent can be assigned fault under chapter 4.22 RCW based on negligent supervision.

STANDARD OF REVIEW

This case requires us to consider the proportionate liability scheme in chapter 4.22 RCW in light of the common law doctrine of parental immunity. Chapter 4.22 RCW was enacted in 1986 and, in general terms, was intended to modify certain principles of tort law. Under specific situations, the statute established a system of proportionate fault, modifying the rule of joint and several liability. In situations involving a fault-free plaintiff, joint and several liability

remains as to persons or entities against whom judgment is entered. The centerpiece of chapter 4.22 RCW is RCW 4.22.070. RCW 4.22.070(1) provides:

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW. The sum of the percentages of the total fault attributed to at-fault entities shall equal one hundred percent. *The entities whose fault shall be determined include* the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities with any other individual defense against the claimant, and *entities immune from liability to the claimant*, but shall not include those entities immune from liability to the claimant under Title 51 RCW. Judgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except:
>
> . . . .
>
> (b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages.

(Second alteration in original) (emphasis added). Under RCW 4.22.070, the foundation of fault apportionment is that all tortfeasors responsible to the injured plaintiff are identified and a percentage of fault is assigned among them. Relying on the clause "entities immune from liability to the claimant," the lower courts allowed the jury to apportion fault to the father based on a claim of negligent supervision.

Before applying RCW 4.22.070, a preliminary issue that must be resolved is whether a tort duty exists from which fault can be found for negligent parenting.[2] The trial court and Court of Appeals failed to first determine whether a parent can be liable in tort for his or her child's injuries based on a theory of negligent supervision. While cases have described the principle as a form of "parental immunity," what the cases establish is that no tort liability or tort duty is actionable against a parent for negligent supervision. Simply stated, it is not a tort to be a bad, or even neglectful, parent.

We comprehensively discussed the cases establishing this rule in *Zellmer v. Zellmer*, 164 Wn.2d 147, 188 P.3d 497 (2008). *Zellmer* involved a wrongful death claim brought based on the drowning death of a child while under the stepfather's care. The suit alleged negligence and negligent supervision claims. We were urged to abolish our long standing parental immunity doctrine. We rejected that argument and held the claim was barred. Important to the analysis and conclusion in *Zellmer* is the analysis of our case law and the principles we have established.

---

[2] RCW 4.22.015 defines "fault" as "acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

"A comparison of fault for any purpose under RCW 4.22.005 through 4.22.060 shall involve consideration of both the nature of the conduct of the parties to the action and the extent of the causal relation between such conduct and the damages."

We reasoned that

> this court has consistently held a parent is *not liable* for ordinary
> negligence in the performance of parental responsibilities. *Jenkins* [*v.
> Snohomish County Pub. Util. Dist. No. 1*], 105 Wn.2d 99[, 713 P.2d
> 79 (1986)] (disallowing contribution claim where parents allowed
> child to wander free in neighborhood; child electrocuted at utility
> power station); *Talarico v. Foremost Ins. Co.,* 105 Wn.2d 114, 712
> P.2d 294 (1986) (disallowing negligent supervision claim where
> parent started backyard fire then left three-year-old son unattended,
> resulting in severe burns); *Baughn v. Honda Motor Co.,* 105 Wn.2d
> 118, 119, 712 P.2d 293 (1986) (disallowing contribution claim where
> parents allowed sight-impaired child to ride motorbike, resulting in
> fatal crash); *Stevens v. Murphy,* 69 Wn.2d 939, 421 P.2d 668 (1966)
> (disallowing suit against divorced parent who negligently injured
> children while transporting them home from a scheduled visitation),
> *overruled in part by Merrick* [*v. Sutterlin*], 93 Wn.2d [411,] 413[, 610
> P.2d 891 (1980)]; *DeLay v. DeLay,* 54 Wn.2d 63, 337 P.2d 1057
> (1959) (disallowing negligence action against parent who instructed
> son to siphon gas, resulting in burn injuries); *Cox v. Hugo,* 52 Wn.2d
> 815, 329 P.2d 467 (1958) (disallowing contribution claim against
> parent who failed to prevent child from wandering into neighbor's
> yard where she was burned by trash fire).

*Zellmer*, 164 Wn.2d at 155-56 (emphasis added).

*Zellmer* went on to recognize when this principle applies:

> There now appears to be nearly universal consensus that
> children may sue their parents for personal injuries caused by
> intentionally wrongful conduct. However, the overwhelming majority
> of jurisdictions hold parents are not liable for negligent supervision of
> their child, whether stated in terms of a limited parental immunity
> (among jurisdictions that have partially abrogated the parental
> immunity doctrine), parental privilege (among those that either
> abolished the immunity doctrine outright or declined to adopt it in the
> first instance), or lack of an actionable parental duty to supervise. *See
> Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d
> 859 (1974) (declining to recognize cause of action for negligent
> supervision claim following abrogation of parental immunity

doctrine); Romualdo P. Eclavea, Annotation, *Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence—Modern Cases*, 6 A.L.R.4TH 1066, § 14 (1981) (collecting cases where negligent supervision claims are barred notwithstanding abolition of parental immunity); Barbara A. Micheels, *Is Justice Served? The Development of Tort Liability Against the Passive Parent in Incest Cases*, 41 ST. LOUIS L.J. 809, 842 n.231 (1997) (summarizing the status of the tort of negligent parental supervision claims in the 50 states).

*Zellmer*, 164 Wn.2d at 157-58 (footnote omitted).

We said,

[T]he primary objective of the modern parental immunity doctrine is to avoid undue judicial interference with the exercise of parental discipline and parental discretion. This rationale remains as vital today as it was in 1986. Parents have a right to raise their children without undue state interference. *In re Custody of Brown*, 153 Wn.2d 646, 652, 105 P.3d 991 (2005) (citing *In re Custody of Smith*, 137 Wn.2d 1, 20-21, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S .Ct. 2054, 147 L. Ed. 2d 49 (2000) [(plurality opinion]); *see also Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) (right of Amish parents not to send kids to school after eighth grade); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (right of parents to send kids to parochial school). In exercising that right, parents are in need of a "wide sphere of discretion." *Borst [v. Borst]*, 41 Wn.2d [642,] 656[, 251 P.2d 149 (1952)].

*Zellmer*, 164 Wn.2d at 159. *Zellmer* equated the doctrine to other areas of the law where no tort action exists.

The parental immunity doctrine is similar to the "discretionary functions" exception applicable under the federal tort claims act and the "business judgment rule," which protects the discretionary decision making of business executives. *See United States v. Gaubert*, 499 U.S. 315, 321-23, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (discussing discretionary functions exception); *Scott v. Trans-Sys.,*

*Inc.*, 148 Wn.2d 701, 709, 64 P.3d 1 (2003) (discussing business judgment rule); *Taggart v. State*, 118 Wn.2d 195, 214-15, 822 P.2d 243 (1992) (discussing discretionary governmental immunity exception to Washington's waiver of sovereign immunity). In each instance, the purpose of immunity is to provide sufficient breathing space for making discretionary decisions, by preventing judicial second-guessing of such decisions through the medium of a tort action.

*Zellmer*, 164 Wn.2d at 159-60.

What our cases establish is that no tort claim exists based on negligent parental supervision. Where no tort exists, no legal duty can be breached and no fault attributed or apportioned under RCW 4.22.070(1).

Though parental negligence is denominated an "immunity," we have emphasized that it is similar to how courts characterize discretionary governmental decision-making under the doctrine of "discretionary immunity." *Zellmer*, 164 Wn.2d at 159-60 (recognizing that "[t]he parental immunity doctrine is similar to the 'discretionary functions' exception"). In *Evangelical United Brethren Church of Adna v. State*, 67 Wn.2d 246, 407 P.2d 440 (1965), this court explored the distinction between nontortious discretionary governmental decision-making and actionable governmental tort liability under chapter 4.92 RCW (abolition of government sovereign immunity). Recognizing the difficulty of establishing a definite dividing line, the court embraced the principle established universally by cases that "'it is not a tort for government to govern.'" *Evangelical United*, 67

9

Wn.2d at 253 (quoting *Dalehite v. United States*, 346 U.S. 15, 57, 73 S. Ct. 956, 97

L. Ed. 1427 (1953) (Jackson, J., dissenting)). We reasoned:

> Practically all jurisdictions that have broken varying amounts of ground in the abdication of governmental immunity from tort liability have judicially, if not statutorily, recognized that the legislative, judicial, and purely executive processes of government, including as well the essential quasi-legislative and quasi-judicial or discretionary acts and decisions within the framework of such processes, cannot and should not, from the standpoint of public policy and the maintenance of the integrity of our system of government, be characterized as tortious however unwise, unpopular, mistaken, or neglectful a particular decision or act might be.

*Evangelical United*, 67 Wn.2d at 253 (citations omitted). The direct link

between such immunity and parental immunity recognized in *Zellmer* makes

clear that just as it is not a tort for government to govern, it is not a tort for

parents to parent. Bad parenting cannot be subject to "judicial second-

guessing . . . through the medium of a tort action." *Zellmer*, 164 Wn.2d at

160.

The definition of "fault" in RCW 4.22.015 also supports our

reasoning. Under RCW 4.22.015, in order to be an "at fault" entity, one must

have negligent or reckless conduct breaching some recognized duty. This

was reiterated in *Price v. Kitsap Transit* when we analyzed this statutory

language. *See* 125 Wn.2d 456, 461-62, 886 P.2d 556 (1994). Under RCW

4.22.015, "the trier of fact cannot apportion fault to individuals whose

actions fall outside the legal definition of recklessness or negligence." *Price*,

10

125 Wn.2d at 470 (Durham, J., concurring). Thus, in this case, because a parent owes no duty based on negligent supervision, there is no actionable "fault" to bring the parent within the scope of RCW 4.22.070 and RCW 4.22.015, regardless of whether the child or another person or entity seeks to blame the parent.

Another important principle in chapter 4.22 RCW supports our conclusion. In this case, no dispute exists that the two-year-old child is fault free. Yet, his recovery was reduced based on the negligence of the father. This result arguably conflicts with RCW 4.22.020 and the case law establishing the principle that the negligence of the parent cannot be imputed to the child. RCW 4.22.020 provides:

> The contributory fault of one spouse or one domestic partner *shall not be imputed* to the other spouse or other domestic partner or *the minor child* of the spouse or domestic partner to diminish recovery in an action by the other spouse or other domestic partner or the minor child of the spouse or other domestic partner, or his or her legal representative, to recover damages caused by fault resulting in death or in injury to the person or property, whether separate or community, of the spouse or domestic partner.

(Emphasis added.) This section reflects the principle our cases have long recognized under the common law. *See Gregg v. King County*, 80 Wash. 196, 204, 141 P. 340 (1914) (action by six-year-old against county based on negligent dock construction and maintenance; stating that "[i]t is obvious that such cases afford no support to the doctrine that the negligence of the parent is to be imputed to the child"); *Roth v. Union Depot Co.*, 13 Wn. 525, 546, 43 P. 641 (1896) (action by

11

nine-year-old child against railroad company for injuries; holding that "negligence of the parent cannot be imputed to the child"). Misconstruing parental immunity and RCW 4.22.070 to allow everyone but the innocent child to second-guess a parent's negligent supervision in a tort claim accomplishes indirectly what the statute and cases expressly prohibit.

Since 1896, Washington has recognized that the negligence of a parent cannot be imputed on a child. *Roth*, 13 Wn. 525. The interpretation of RCW 4.22.070 we adopt today ensures that RCW 4.22.020 and our common law principles are not violated—a parent cannot be an at-fault party based on negligent supervision, thus, their negligent actions cannot be imputed on their child.

Under chapter 4.22 RCW, a determination of fault must precede any analysis of immunity; a parent is not liable for a child's injuries based on a theory of negligent supervision. Our cases consistently recognize no tort action exists as a matter of law. While we call this "immunity," it is akin to discretionary governmental immunity, judicial and quasi-judicial immunity, and similar doctrines establishing that the conduct in question is simply not tortious. Thus, there is no fault to be apportioned under RCW 4.22.070.

12

*Smelser v. Paul*, No. 93076-7

We reverse and remand to the trial court with instructions to enter judgment against Paul for the entire amount of Derrick's damages found by the jury.

WE CONCUR:

No. 93076-7

YU, J. (dissenting) — An innocent child is badly injured through no fault of his own. His injuries were caused by the combined fault of two different people. One of those people is immune from liability to the child. Thus, who should bear the financial consequences of that person's immunity? Should the child be forced to bear the consequences and recover the damages caused only by the nonimmune person's fault? Or should the nonimmune person be forced to bear the consequences and pay the child's full damages, including those caused by the immune person's fault?

The majority adopts the latter approach, and if we were considering this question in the first instance as a matter of policy, I would too. Unfortunately, it is not our decision in the first instance, and we cannot decide it as a matter of policy. The legislature has clearly determined that the plaintiff (in this case, the child) must bear the financial consequences where fault is apportioned to an immune entity pursuant to RCW 4.22.070. I therefore respectfully dissent.

1

ANALYSIS

As the majority rightly notes, we have previously held that a parent cannot

be liable in tort for injuries to his or her child if those injuries were caused by

negligent parenting. *Zellmer v. Zellmer*, 164 Wn.2d 147, 155, 188 P.3d 497

(2008). But unlike a direct claim by a child or a contribution claim by a third

party, allocating fault to an immune parent does not render the parent liable. In

fact, RCW 4.22.070(1) expressly *forbids* entering judgment against an immune

entity. The soundness of the parental immunity doctrine is not at issue in this case.

Rather, the actual issue presented is whether Jeanne Paul was properly

allowed to raise an affirmative defense that pointed to another entity (who

happened to be an immune parent) whose *factual* fault limited Paul's liability to

the damages actually caused by her own negligence. To resolve that issue, the

majority decides to adopt a new definition of an "entity" to whom fault can be

apportioned pursuant to RCW 4.22.070(1). We formerly defined an "'entity'" as

"a juridical being capable of fault." *Price v. Kitsap Transit*, 125 Wn.2d 456, 461,

886 P.2d 556 (1994). Now it appears that a majority of this court holds that an

"entity" is a juridical being capable of fault *who has an actionable duty in tort to*

*refrain from the particular fault alleged.* Majority at 6.

It is difficult to reconcile this new definition with RCW 4.22.070(1)'s plain

language, which allows apportionment of fault to "entities immune from liability to

2

the claimant." I simply cannot think of an entity that has *both* an actionable duty in tort to refrain from the particular fault alleged *and* immunity from liability for that fault. I believe there is no such entity, although I invite the majority to prove me wrong by providing some examples. However, if I am correct that no such entity exists, then the majority's new definition of an "entity" precludes any possibility of applying RCW 4.22.070 to an immune entity. It is illogical to suppose that the legislature allowed apportionment of fault to "entities immune from liability to the claimant" with the intention that such apportionment could never actually occur. RCW 4.22.070(1). And regardless of whether we agree with the legislative intent expressed in the plain language of RCW 4.22.070(1), it is our duty to give effect to that intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

Moreover, the majority's reliance on *Price*, 125 Wn.2d 456, is misplaced. *Price* determined that "children under 6 years of age are incapable of fault as that term is used in RCW 4.22.070(1) and are not 'entities' to which fault may be apportioned under the statute," *id.* at 464, consistent with "the "fundamental practice of not assigning fault to animals, inanimate objects, and forces of nature" and the principle that "children under 6 do not have the mental capacity to be negligent," *id.* at 461. *Price* simply does not apply here.

3

Unlike animals, inanimate objects, forces of nature, and children under age six, parents do have the mental capacity to be negligent—that is, they are *capable* of negligent parenting as a matter of fact, even though they are not *liable in tort* for such negligence as a matter of law. *Cf.* RCW 26.44.195(1) (discussing services that the Department of Social and Health Services may offer if a child has been subjected to "negligent treatment" by any caregiver, including a parent). Moreover, a parent is *not* immune from liability to his or her children for willful or wanton misconduct, which goes beyond mere negligence but is still within the definition of "fault" applicable to RCW 4.22.070. *Tegman v. Accident & Med. Investigations, Inc.*, 150 Wn.2d 102, 110 n.5, 75 P.3d 497 (2003).

Finally, RCW 4.22.020 is irrelevant to the issue presented in this case. That statute forbids diminishing a child's recovery *by imputing the parent's negligence to the child*. Diminished recovery and imputed fault are distinct concepts. "Imputation of fault" means treating the parent's fault as the child's own fault. It has always been properly undisputed in this case that the father's negligence cannot be imputed to his child.

## CONCLUSION

I agree with the majority as a matter of policy, but I cannot agree with it as a matter of law. I therefore respectfully dissent.

4

_____

Yu, J

Fairhurst, CJ.

González, J.

Madson, J.