[No. 10457.   Department Two.   June 5, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Wauconda Investment Company, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

EMINENT DOMAIN—POWER—AUTHORITY OF COUNTY—STATUTES— CONSTRUCTION.   Under the rule that counties have only such powers as are conferred by statute, and that statutes of eminent domain, being in derogation of common right, are to be strictly construed, a county has no power to condemn lands within a city of the first class for a public wharf or dock, not connected with a county road; since a wharf is in no sense a county road; Rem. & Bal. Code, § 8114, limiting the right of eminent domain to wharf sites at the terminus of county roads and not within the limits of first-class tide lands.

· SAME.   Such power is not conferred by the act of 1911, p. 3, authorizing a county to sell bonds in aid of enterprises undertaken by the state or county in aid of commerce and the "acquisition" of canals, docks, wharves, etc., the act not expressly conferring the power of eminent domain, and the power never being implied from the power to "acquire."

[1]Reported in 124 Pac. 127.

SAME.  Laws 1895, ch. 2, passed for the single purpose of permit-
ting King county to condemn a right of way for the Lake Washing-
ton Canal, and granting the power of eminent domain expressly
limited to the purposes mentioned in the first section, cannot be ex-
tended by implication to authorize a county to exercise the right of
eminent domain to acquire a public wharf or dock, under Laws 1911,
p. 3, providing for county aid to certain state and Federal enter-
prises in aid of commerce and the acquisition of docks and wharves,
which contains no grant of the right of eminent domain.

Certiorari to review a judgment of the superior court for
King county, Myers, J., entered May 8, 1912, adjudging a
public use, in proceedings to condemn land for a public wharf.
Reversed.

*Peters & Powell*, for relator.

*John F. Murphy* and *Robert H. Evans*, for respondent.

ELLIS, J.—The county of King, by petition and notice,
instituted in the superior court for that county a proceeding
to condemn lands within the limits of the city of Seattle near
the mouth of the Duwamish river, for a site for a public dock
and wharf.  The relator, Wauconda Investment Company,
as owner of much of the land sought to be taken, was made
a party and interposed a demurrer to the petition, challeng-
ing the authority of the county to exercise the power of emi-
nent domain for the purpose mentioned.  The court over-
ruled the demurrer, and the petitioner introduced evidence
upon which the court entered orders adjudging the contem-
plated use a public use, and directing that a jury be empan-
eled to assess the damages.  The relator has brought the rec-
ord and evidence to this court for a review of the action of
the trial court.

No question is made upon the evidence.  It is admittedly
sufficient to show a public use if the statutes of this state
give the county authority to condemn the property for the
proposed use, which is the sole question presented for our de-
termination.  In its consideration, two elementary principles
must be borne in mind; namely, that counties have only such

powers as are conferred upon them by legislative enactment; and that statutes conferring the power of eminent domain, being in derogation of the common right, must be strictly construed. *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847; *Seattle v. Fidelity Trust Co.*, 22 Wash. 154, 60 Pac. 133; *State ex rel. Attorney General v. Superior Court*, 36 Wash. 381, 78 Pac. 1011; *State ex rel. Postal Tel. Cable Co. v. Superior Court*, 64 Wash. 189, 116 Pac. 855; *Neitzel v. Spokane International R. Co.*, 65 Wash. 100, 117 Pac. 864, 36 L. R. A. (N. S.) 522; *Fork Ridge Baptist Cemetery Ass'n v. Redd*, 33 W. Va. 262, 10 S. E. 405; *Georgia R. & Banking Co. v. Union Point*, 119 Ga. 809, 47 S. E. 183; *In re Willis Avenue*, 56 Mich. 244, 22 N. W. 871.

"The authority to condemn must be expressly given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist. 'There must be no effort to prove the existence of such high corporate right, else it is in doubt; and, if so, the state has not granted it.' If the act is silent on the subject, and the powers given by it can be exercised without resort to condemnation, it is presumed that the legislature intended that the necessary property should be acquired by contract." Lewis, Eminent Domain (3d ed.), § 371.

It must be conceded at the outset, that the legislature has not by any express grant conferred upon counties the right to exercise the power of eminent domain for the purpose here in question. The suggestion that a public dock and wharf is a species of public highway, and that the power to condemn for right of way for the latter therefore includes the power to condemn a site for the former, may not be seriously considered. A dock or wharf is not in any ordinary sense a highway. Moreover, we have no statute authorizing counties to acquire rights of way for public highways within city limits.

The respondent contends that the grant of power claimed is implied from the general purposes disclosed in either of two combinations of statutes.

(1)    It is first urged that the statute of 1903 (Laws 1903, p. 20; Rem. & Bal. Code, § 8114 *et seq.*), taken in connection with the statute of 1911 (Laws 1911, p. 3), shows by implication a legislative intention to grant the power claimed.   The act of 1903 is admittedly not of itself sufficient.   It contains no *general* grant of the power of eminent domain for the acquisition of wharves and docks.   The power to acquire, and hence the right to condemn granted in aid of that power, is expressly limited to wharf sites at the termination of county roads upon navigable waters, "and not included within the limits of tide or shore lands of the first class."   The site here in question is tide lands of the first class, and there is no claim that it is at the termination of a county road.   It is therefore excluded from the grant of the act of 1903, which palpably is intended only as an aid to the power of counties to establish and improve county roads.

By the act of 1911 (Laws 1911, p. 3), it is provided that, whenever the board of county commissioners of any county of the first class shall deem it for the interest of the county to engage in or to aid the United States, the state of Washington, or any adjoining county, in the "construction, enlargement, improvement, modification, repair or operation of any harbor, canal, waterway, river channel, slip, dock, wharf, or other public improvement, or any of the same, for the purposes of commerce, navigation, sanitation, and drainage, or any thereof, or to acquire or operate wharf sites, dock sites, or other properties, rights or interests, or any thereof, necessary or proper to be acquired or operated for public enjoyment of any such public improvement, and to incur indebtedness to meet the cost thereof," etc., the board upon a vote of the people may issue and sell bonds for the purpose.   The act declares such purpose to be a county purpose.   It does not expressly confer the power of eminent domain.   It is silent on

the subject. The power of acquisition expressly granted can be exercised without resort to condemnation. In such a case, a grant of the power of eminent domain is never implied. As said in the above quotation from Lewis on Eminent Domain, "it is presumed that the legislature intended that the necessary property should be acquired by contract."

It is thus manifest that neither of the acts referred to, standing alone, confers the power here sought to be exercised. It is argued, if we have caught counsel's meaning, that though the act of 1903 did not make the acquisition of any wharf or dock sites (except at the end of county roads and outside of tide or shore lands of the first class) a county purpose, yet, when the legislature, by the act of 1911, declared the acquisition by counties of public wharves and docks in any location a county purpose, it removed the limitations of the act of 1903, and impliedly extended the power of eminent domain accorded in that act to the acquisition of all public wharves and docks wherever located.

An implication so remote and difficult of development can never be indulged. The argument is basically unsound. It assumes a *general* grant in the act of 1903 of the power of eminent domain for the acquisition of public wharves and docks. The act itself limits the power *to acquire* wharves and landings to the termini of county roads and to tide and shore lands other than first class. The power of eminent domain is merely granted in aid of this power to acquire, and because it is not implied from the power to acquire. The act of 1911 does not in any manner refer to the act of 1903. The objects of the two acts are widely different. They are not even *in pari materia* so as to require a joint construction. The one was passed in aid of the power of counties to establish and improve county roads; the other to empower counties to aid in certain enterprises undertaken by the state, nation, or another county. There is nothing in the terms, purposes, or relation of the two acts from which an implication can arise that the later act enlarges the definitely limited provisions of

the earlier.   If the legislature had intended to grant the power of eminent domain in aid of the power to acquire wharf sites granted by the act of 1911, we can hardly conceive that it would have relied upon so tortuous and unnecessary and, as it seems to us, impossible mode of conferring it as that urged by counsel rather than make a direct grant.

(2)   Respondent's second contention is that the act of 1895 (Laws 1895, p. 3, ch. 2), when taken in connection with the act of 1911, confers the power here sought to be exercised.   The act of 1895 grants to any county the right of eminent domain,

"Whenever the government of the United States or of this state is intending or proposing the construction, operation or maintenance of any public work situated or to be situated wholly or partly within such county, . . . and such condemnation . . . will enable the county to aid, promote, facilitate or prepare for any such construction, operation, maintenance or expenditure by either or both such governments, or to fulfill or dispose of any condition upon which such construction, operation, maintenance or expenditure is by law or from any cause contingent," etc.

The grant of the power is found in section 3 of the act, and is expressly limited to the purposes mentioned in the first section and above enumerated.   It is admitted that the act of 1895 was passed for the single purpose of permitting King county to condemn a right of way for the Lake Washington canal.   It is argued that the purpose of the United States in that proposed work is to aid commerce and navigation, and inasmuch as the acquiring of public docks will aid that purpose, the right of eminent domain to acquire dock sites should be deemed conferred by the act of 1895.   While the aid of commerce and navigation is in the broad and ultimate sense the purpose of the enterprise, it is not one of the specific purposes enumerated in section 1 of the act to which the grant of the power of eminent domain in section 3 is in express terms made an aid.   It would be as logical to say that the power to condemn for a lighthouse is conferred by

the act of 1895 as for a dock, since both are in aid of commerce and navigation, and neither is included in the enumerated purposes to which the power of condemnation is by the act expressly directed. Such a holding would make every grant of the power of eminent domain a menace to the right of private property, since there is hardly a private interest which would not touch at some point, more or less remote, the general purpose of any large enterprise. On no safe or tenable ground can it be held that the act of 1895 confers upon counties the power to condemn for wharves and docks.

But it is argued, since the act of 1911 has greatly enlarged the power of counties with reference to joint aid in public improvements over the act of 1895, that therefore the later act should be construed as correspondingly enlarging the power of eminent domain granted to the county by the earlier statute. It is true, as held in *Blaine v. Hamilton*, 64 Wash. 353, 116 Pac. 1076, 35 L. R. A. (N. S.) 577, that the county may, under the act of 1911, aid in the general purpose of developing a great harbor and may by a vote of the people issue bonds for that purpose; but it is just as true that the county has been granted the power of eminent domain in the matter of such aid only by the act of 1895, and only, as therein stated, in aid of the specific purposes "mentioned in the first section of this act." We are forced back to the original question which we have already answered in the negative: Can a grant of the power of eminent domain, made in a given act for specific purposes, be impliedly extended to other purposes by a subsequent act merely because such other purposes contemplated by the subsequent act would be aided by an enlargement of the power of eminent domain granted in the first act? No authority for an affirmative answer has been cited, and we know of none. This court has distinctly recognized the fact that the act of 1895 was passed to meet the requirements imposed by the United States as a condition for the building of the Lake Washington canal. *Bilger v. State*, 63 Wash. 457, 116 Pac. 19. The

plain purpose of that act was to enable the county to aid the United States in that specific work.   The fact that the act of 1911 has enabled the county to acquire things which that government work will make possible and desirable in no manner affects or changes the scope of the act of 1895.   To say that the fact that the act of 1895 confers upon the county the rights to exercise the power of eminent domain in aid of work undertaken by the government raises an implication that the county may condemn for anything which such government work may make desirable, is simply to reverse the statute and apply its grant of the power of condemnation not to aid the enterprise then in the legislative mind, but to all other enterprises which that enterprise might aid.   If the legislature had intended by the act of 1911 to grant the power of eminent domain in aid of the things authorized by that act, it would have done so in terms.   The implication urged is too vague and remote, not to say impossible, to have ever entered the legislative mind.   The position is not helped by the evidence.   The evidence shows that the construction and improvement of the Duwamish waterway does not in any manner aid or assist the government of the United States in building the Lake Washington canal.

We find no statutory authority, either express or implied, conferring upon the county the right of condemnation here invoked.   That the right is very desirable is an argument which must be addressed to the legislature rather than to the courts.

The cause is remanded, with direction to dismiss the petition.

DUNBAR, C. J., FULLERTON, and MOUNT, JJ., concur.