[No. 11603. Department One. June 26, 1914.]

## ALTON LOUIS GREGG, *a minor, etc., Respondent,* v. KING COUNTY, *Appellant.*[1]

WHARVES—PUBLIC DOCK—CONSTRUCTION—NEGLIGENCE — LIABILITY OF COUNTY—QUESTIONS FOR JURY. The negligence of a county in maintaining a public dock with a loose fender-pile, whereby a child's hand was caught and crushed, is for the jury, where experts testified that the proper and safe construction was to have the fender-piles bolted to the dock, it being admitted that this would have prevented the injury.

WHARVES—PUBLIC DOCKS—MAINTENANCE — LIABILITY OF COUNTY. A county is bound to exercise the same degree of care for the safety of the public in the maintenance of a public dock at the termination of a county road as is required in the case of public highways; especially in view of the statute authorizing the maintenance of county docks only at the termination of county roads.

NEGLIGENCE—DANGEROUS PREMISES—PUBLIC DOCK—TRESPASSERS— CHILDREN. A child of tender years (six), accompanying an older brother who was sent on an errand to a public dock to meet a steamer, is not a trespasser in going upon the dock, which was at the termination of a county road.

NEGLIGENCE—DANGEROUS PREMISES—PLACES ATTRACTIVE TO CHILD. A county is charged with notice and bound to anticipate that a public dock at the termination of a county road is a place attractive to children and might be used by them for recreation, especially where the county allowed a confectionery stand upon the dock.

SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS. In the absence of evidence to the contrary, a child of six or seven years of age is presumed to be incapable of contributory negligence.

NEGLIGENCE—PERSONAL INJURIES — ACTION BY CHILD — CONTRIBUTORY NEGLIGENCE OF PARENT. In an action by a minor child of tender years to recover for his own personal injuries, the contributory negligence of his parents is no defense.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $3,202, for personal injuries sustained by a child, whose hand was crushed so that it was stiff and lacked the power of gripping and probably would never be as strong as a normal hand, and one finger had to be amputated, is not so excessive as to indicate passion or prejudice.

[1]Reported in 141 Pac. 340.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 30, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained upon a public dock. Affirmed.

*John F. Murphy* and *Robert H. Evans*, for appellant.

*B. J. Shipman* and *Dudley G. Wooten*, for respondent.

ELLIS, J.—This action was brought to recover damages for injuries sustained by the plaintiff, a boy between six and seven years old, through the alleged negligence of the defendant in the construction and maintenance of its dock, at Juanita, on the eastern shore of Lake Washington.

The facts are practically undisputed. The dock in question was owned and operated by the county for the use of the public in connection with boats touching at Juanita. It was constructed on wooden piles, driven into the bed of the lake. The floor was of planking, and was bounded on its outer edge by a line of beams or "stringers," rising about ten inches above the floor. These, at the southerly side of the dock, where the accident occurred, were flush with the edge of the dock. At that side were driven piles about a foot in diameter, called "fender-piles," the purpose of which was to receive the impact of boats and to protect the wharf. The pile causing the injury was driven into the bottom of the lake eight or ten feet, and rose alongside the dock to a height of about a foot and a half above the stringer. It was not bolted to the dock, and there was a space of four or five inches between it and the dock.

A few feet east of this fender pile was a small warehouse for storing freight, and a few feet west was a slip or incline for the convenience of persons going to and from the boats. A few feet north of the warehouse was a small confectionery store. Contiguous to the wharf on the shore side, and constructed upon a trestle on a level a little above the floor of the wharf, ran the road from Juanita to Kirkland. A line of

boats ran to this dock regularly, making four or five land-
ings a day to receive and discharge freight and passengers.

The dock was regularly used by the public in meeting,
embarking upon, and leaving boats. Among the persons
thus using the dock, were the older brother and sister of the
plaintiff, one of whom was sent there daily by their parents
to meet the boat arriving at five o'clock in the afternoon and
receive the Seattle paper. On August 9, 1912, the plaintiff's
older brother, aged nine, accompanied by the plaintiff, vis-
ited the dock for this purpose, arriving a few minutes in ad-
vance of the boat. They seated themselves in the narrow
space between the warehouse and the slip, and on the stringer
running along the edge of the dock, their feet resting upon
the floor. The plaintiff was sitting behind the fender-pile
above mentioned, his right arm around the pile, and his left
arm hanging down between the pile and stringer upon which
he was seated. He remained in this position, watching the
incoming boat, until the vessel struck the fender-pile, driving
it against the dock, and mashing his left hand between the
pile and the stringer. The hand was crushed so that it was
necessary to amputate the little finger, the skin from the
palm of the hand and on the forearm was badly lacerated,
and the whole hand was severely bruised. After the arm was
healed, a large scar remained, and the hand was stiff and
lacked the power of gripping. Physicians who examined the
boy testified that the injured hand does not perform its nor-
mal functions, that it is doubtful whether or not the hand
will ever be as strong as a normal hand, and that the scar
on the arm will be permanent. The plaintiff resided with his
parents over a quarter of a mile from the dock and had been
repeatedly warned by his parents not to go upon or play
upon the dock.

It is undisputed that, if the fender-pile in question had
been bolted to the dock, this accident would not have hap-
pened, and it appears that many of the piles about this
dock were bolted at the time of the accident. There was

some dispute as to whether a bolted pile would be as adequate a protection to the dock as a loose one; but the county inspector of docks and bridges, a witness for the defendant, testified that, about four years before the trial, the county engineer's office had adopted the plan of bolting the fender-piles to the county docks in order to keep them in place. Another witness, a structural engineer, who had had charge of the construction of bridges and docks for King county during the year 1912, and under whose direction the dock here in question had been repaired in May and June of that year, testified that he had constructed and repaired seventy-five or eighty docks and that, according to the approved and safe method of construction, a fender-pile such as that which caused the injury should be bolted to the dock, and that a pile not so bolted would be dangerous.

At the close of the plaintiff's case in chief, the defendant moved for a nonsuit, which was denied. The jury returned a verdict upon all the evidence and the court's instructions, for the sum of $3,202 and costs. The defendant appealed.

The appellant assigns as errors: (1) the overruling of the motion for a nonsuit; (2) the giving of certain instructions and the refusal to give certain requested instructions; (3) the refusal of a new trial because of these things and because of excessive verdict.

I. The appellant claims that its motion for a nonsuit should have been granted because no actionable negligence on its part was shown. It is argued that the function of a given structure controls the plan of construction; that the wharf here in question was built only to accommodate travel and traffic on the lake; that its construction was reasonably safe for that purpose; that it was not intended as a lounging place or playground for trespassing children and that the fact that it was unsafe for that purpose was no evidence of negligence, since the presence of children on the dock and an injury such as occurred could not have been anticipated. The vice of this argument consists in the initial assumption

that the wharf, as constructed, was, as a matter of law, reasonably safe for all things connected with traffic and travel. Let us suppose that this child had gone onto the wharf with his elder brother or, for that matter, with his parents, for the purpose of taking passage upon the boat, and, while waiting alongside the slip for the boat to make a landing, the child had been injured just as he was injured. Eliminating, for the present, the question of contributory negligence, it is clear that, under the evidence, the question of the appellant's negligence in leaving the fender-pile loose and insecure, contrary to its own plan of construction adopted three or four years previously, would have been a question for the jury. The question of primary negligence, like that of contributory negligence, is always a question of fact for the jury and not a question of law for the court, whenever the minds of reasonable men might differ as to its existence. *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351. 1 Thompson, Negligence (2d ed.), § 425.

The second phase of this argument is also unsound in assuming that, as a matter of law, the child who was injured was a trespasser not using the dock for, or in connection with, any purpose for which it was intended. The argument overlooks the fact that this dock was a public dock, intended for the use of all members of the public, children as well as adults. While we have held that a public dock is not a highway in such sense as to extend the right of eminent domain conferred by statute for the acquiring of rights of way for highways to the acquiring of dock sites, such statutes being strictly construed, and not extended by mere analogy (*State ex rel. Wauconda Inv. Co. v. Superior Court*, 68 Wash. 660, 124 Pac. 127, Ann. Cas. 1913 E. 1716), it is none the less true that a public dock is a public place, maintained by the county under statutory authority (Rem. & Bal. Code, § 8114, P. C. 533 § 9), for the public use and convenience. There is, therefore, the same duty upon the county to exercise reasonable care for the safety of the public and all persons having

occasion to use such docks as is found in case of public highways, since both are, broadly speaking, public ways. *Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola*, 134 N. Y. 461, 31 N. E. 987, 30 Am. St. 685; 2 Shearman & Redfield, Negligence (6th ed.), § 333. As further sustaining this view, the statute above referred to authorizes the construction and maintenance of such wharves only at the termination of a county road at or near the shore of navigable waters or water courses, thus recognizing a use of such wharves in connection with, and impliedly coextensive with, the use of such roads.

It would seem, therefore, that the child here in question had the same right upon this dock that it would have had upon the trestle forming the road immediately contiguous thereto. Unquestionably, had this child been injured in passing along the trestle, which constituted the public road at this point, by reason of a structural defect in the trestle, he would have had the right to recover from the county for such injury. *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64. Moreover, even assuming that a child six years of age is capable of trespass in the strict legal sense—a thing upon which we have more than once expressed doubt (*Haynes v. Seattle*, 69 Wash. 419, 125 Pac. 147; *Bjork v. Tacoma*, 76 Wash. 225, 135 Pac. 1005, 48 L. R. A. (N. S.) 331; 1 Thompson, Negligence (2d ed.), § 1026),—this child was not a trespasser under the circumstances shown by the evidence. He visited the wharf in company with his brother on an errand connected with the purpose for which the wharf was intended. Even taking the appellant's restricted view of the matter, visiting the dock to receive a newspaper was as lawful an errand as a visit to receive freight or to meet a friend. True, the boy was not sent on this errand with his brother, but his presence would have been no more necessary had he been sent by his parents with the brother. Obviously, the mere circumstance of such sending could have no effect upon the quality of his act. It could not change a trespass to an

innocent visit, yet we have held, in effect, that a child six years old sent by a parent with an older sister to the post office in a populous city was rightfully on the street. *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912 B. 842.

Nor are we impressed with the assertion that the presence of young children on the dock could not have been anticipated. Being a public dock, the appellant was chargeable with notice that it might be used, just as a public street, road or other public place may be used, by any member of the public. It is not claimed that any notice was given or measures of any kind taken to exclude children. Under such circumstances, it has even been held that the use of a public wharf for recreation is such lawful use that a parent may recover for the death, caused by a structural defect in the wharf, of a boy eight years old so using it with the parents' knowledge. *Delaney v. Pennsylvania R. Co.*, 29 N. Y. Supp. 226; see, also, *Gluck v. Ridgewood Ice Co.*, 9 N. Y. Supp. 254. No decision of any court has been cited to the contrary. In addition to this, the presence of the confectionery stand upon the dock, which it must be assumed was there with the appellant's permission, was an implied invitation to children and others to visit the dock for purposes not strictly connected with its function as a wharf. The appellant can hardly be heard to say that the presence of children could not reasonably have been anticipated. *Harriman v. Pittsburg, C. & St. L. R. Co.*, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. 507. "The liability in such a case should be coextensive with the inducement or implied invitation." *Plummer v. Dill*, 156 Mass. 426, 31 N. E. 128; *Sweeny v. Old Colony & Newport R. Co.*, 10 Allen 368, 87 Am. Dec. 644. Under the circumstances disclosed by the evidence, we are clear that the question of the appellant's negligence was properly submitted to the jury.

The appellant intimates, rather than argues, that the non-suit should have been granted because of contributory negli-

gence on the child's part.   Contributory negligence was charged in the answer, and the court gave the usual instruction as to the affirmative nature of this defense and that to be available the defense must be established by the evidence.   No evidence was offered as to the capacity of this child.   In the absence of evidence to the contrary, a child of six or seven years of age "is everywhere presumed to be incapable of contributory negligence."   1 Shearman & Redfield, Negligence (6th ed.), § 73a.   The motion for a nonsuit was properly overruled.

II.   The court instructed the jury to the effect that no act of negligence on the part of the parents of the child, whether of omission or commission, could prevent a recovery by the child if, under the evidence and other instructions, the jury was of the opinion that the defendant was liable for the injuries sustained by the child; that the rights of the parties must be judged without regard to acts of negligence on the part of the child's parents, and that:

"It would not necessarily be negligence in law for the parents to send the plaintiff, aged six years, along with his older brother, aged ten years, to the public dock at Juanita, to meet the boat for the purpose of getting a newspaper or to permit him to go with the older brother, but even if the facts should be such as to lead the jury to believe that the parents were negligent in that regard, that can make no difference as to the right of the plaintiff to recover if the facts as shown by a preponderance of the evidence and the law as given you by the court entitled him to a verdict at your hands."

The appellant contends that, in these instructions, the court went entirely too far in exonerating the parents from any duty in the custody and control of the child.   The whole argument in this connection is based upon the doctrine of imputed negligence.   The only logical basis for the doctrine of imputed negligence is tersely stated by Shearman & Redfield as follows:

"The ethical proposition at the basis of the legal theory is that the person to whom the negligence of another is imputed, owing to the relation between them, ought to be held responsible for the conduct of such other in respect to the cause of the injury." 1 Shearman & Redfield, Negligence (6th ed.), § 65a.

In cases of injury to, or wrongful death of, a child, where the action is brought by a parent for his own benefit, the contributory negligence of the parent, the actual plaintiff, will, of course, bar a recovery. It is obvious that such cases afford no support to the doctrine that the negligence of the parent is to be imputed to the child. Both the ethical basis of the rule of imputed negligence and sound authority sustain the view that, where the child is the real plaintiff in an action for his own injury, the parent's contributory negligence is no defense. This view is certainly sustained by reason, and is now supported by the great weight of authority. 1 Shearman & Redfield, Negligence (6th ed.), § 71. *Bellefontaine & I. R. Co. v. Snyder*, 18 Ohio St. 399; *Bellefontaine R. Co. v. Snyder*, 24 Ohio St. 670; *Western Union Tel. Co. v. Hoffman*, 80 Tex. 420, 15 S. W. 1048, 26 Am. St. 759; *Pratt Coal & Iron Co. v. Brawley*, 83 Ala. 371, 3 South. 555, 3 Am. St. 751; *Atchison, T. & S. F. R. Co. v. Calhoun*, 18 Okl. 75, 89 Pac. 207; *Robinson v. Cone*, 22 Vt. 213, 54 Am. Dec. 67. At any rate, this court is committed to that view. *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855; *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64. There was no evidence in this case from which it could be held, as a matter of law, that the parents were guilty of any negligence. The mother was ill and the father was away from home. The child who was injured accompanied his elder brother to the dock without the knowledge of either parent, but even had the parents known of the fact, or had they sent the child to the dock with his brother on the errand in question, that would not have constituted negligence as a matter of law, even in a suit for the parents' benefit.

*Tecker v. Seattle, Renton & S. R. Co., supra.* We find no error in the instructions above referred to. They correctly stated the law of the case as applied to the facts presented.

The court also instructed the jury as follows:

"In this case the degree of care and prudence required by law of the defendant must be considered with reference to the uses and purposes for which the dock or wharf where the the accident occurred was constructed, maintained and operated. It is admitted by the pleadings that this dock was a public one, owned and operated by the county, the defendant, and as such you are instructed that it was open to be visited by all classes of people, including children who might be drawn there by curiosity or interest in the arrival and departure of boats, or who might be sent there on errands for their parents."

It is urged that this instruction was erroneous in that it was contrary to the theory of the respondent's complaint. We find it unnecessary to enter into a lengthy analysis of the complaint. It must suffice to say that the complaint alleged that this dock was a public dock, owned and operated by the county. From what we have already said in discussing the question of nonsuit, it is clear that the instruction correctly states the law relative to such places. We find it unnecessary to discuss in detail the instructions requested by the appellant. They were addressed to a theory of the law in direct antagonism to that upon which the instructions were given, and which we have found correct. They were properly refused.

III. Finally, it is urged that the verdict is excessive. While, on first impression, the recovery may seem large in view of the nature of the injuries, yet, when we consider that this child must go through life with a maimed hand, we cannot say that it is so large as to indicate passion or prejudice on the part of the jury. A careful consideration of the evidence convinces us that the injuries are permanent and that the child will never have the same use of the injured hand that it would have enjoyed of a normal hand. One of the

physicians testified that certain operations might tend to relieve the hand of its stiffened condition, but even he did not predict such a result with any degree of certainty.

We find nothing in the record before us warranting a reversal of the judgment, or a reduction of the recovery.

The judgment is affirmed.

CROW, C. J., MAIN, and GOSE, JJ., concur.