[No. 13577-2-III.    Division Three.    June 21, 1994.]

JOHN C. SCHREINER, JR., ET AL, *Appellants,* v. THE CITY OF SPOKANE, *Respondent.*

*Peter A. Witherspoon* and *Workland, Witherspoon, Riherd & Brajcich,* for appellants.

*James C. Sloane, City Attorney,* and *Milton G. Rowland* and *Stanley M. Schwartz, Assistants,* for respondent.

SWEENEY, A.C.J. — John C. and Jane Schreiner, et al. (the Schreiners) appeal the summary judgment and order of public use and necessity entered for the City of Spokane (the City). They contend the Multi-Purpose Community Centers statute, RCW 35.59, and the Public Facilities Districts statute, RCW 36.100, do not authorize the condemnation of their property for construction of the new Spokane arena. We affirm.

# I

## FACTS

In September 1989 the City and Spokane County (the County) adopted resolutions creating the Spokane Public Facilities District (PFD). RCW 36.100.010(2). Its purpose was to determine the feasibility of a new multipurpose arena to replace the aging Coliseum. The PFD is a municipal corporation and taxing authority authorized to act jointly with the City and the County to acquire, construct, operate and regulate such a facility. RCW 36.100.010(3),[1] .030;[2] RCW 35.59.030.[3]

In November 1990, Spokane County voters approved the PFD proposals to acquire, design and construct the Spokane Veterans Memorial Arena and to impose a 2 percent hotel/motel excise tax to help finance the project. A retail sales and use tax was approved by the voters the next year for additional financing.

---

[1]The statute provides:

"A public facilities district is a municipal corporation, an independent taxing 'authority' within the meaning of Article VII, section 1 of the state Constitution, and a 'taxing district' within the meaning of Article VII, section 2 of the state Constitution."

[2]This provision authorizes a public facilities district "to acquire, construct, own, and operate sports and entertainment facilities with contiguous parking facilities."

[3]The statute provides, in part:

"Any municipality is authorized either individually or jointly with any other municipality or municipalities or any governmental agency or agencies, or any combination thereof, to acquire by purchase, condemnation, gift or grant, . . . and to construct, . . . operate and regulate the use of multi-purpose community centers located within such municipality, . . .." A "government agency" is defined as a "taxing district" or "municipal corporation", among other definitions. RCW 35.59.010. A "multi-purpose community center" is defined as: "the lands, interests in lands, property, property rights, . . . and other improvements developed as an integrated, multi-purpose, public facility on a single site . . . for the housing and furnishing of any combination of the following community or public services or facilities: Administrative . . . offices . . . of any municipality, . . . public halls, auditoria, . . . public facilities for the . . . exhibition of arts and crafts, . . . indoor . . . sports and recreation facilities. The term multi-purpose community center shall also mean and include . . . parking facilities for private vehicles and public transportation vehicles . . . and appurtenances incident to and necessary for such centers." RCW 35.59.010.

The City adopted a resolution in December 1992 to lease the undivided one-third interests of both the City and the County to the PFD in order to provide the District "with long-term flexibility in its operation of the Project". Under the terms of the lease, the arena is owned in part by the City until the lease terms are fulfilled and the arena is purchased by the PFD in 2012. Annual rent payments are equal to the principal and interest due on the lease revenue bonds issued by the City and the County. A default would terminate the PFD's leasehold and property interests.

After unsuccessfully negotiating to buy land for the arena project from the Schreiners, the Spokane City Council in January 1993 passed an ordinance authorizing condemnation of the property. The Schreiners filed a declaratory action in April 1993 seeking invalidation of the ordinance. In May the City filed a petition to acquire the Schreiners' land by eminent domain. These actions were consolidated and the two parties moved for summary judgment on their respective claims. The Superior Court denied the Schreiners' motion for summary judgment, granted the City's motion for summary judgment and issued a decree of public use and necessity on October 1, 1993. This expedited appeal followed.

## II

### Motion for Introduction of Additional Evidence

Preliminarily, we rule on the Schreiners' motion for introduction of additional evidence on appeal. The evidence offered includes (1) documents pertaining to the November 1990 ballot authorizing construction of the new arena; (2) the August 25, 1993, contract between the PFD and Garco Construction for development of the arena; and (3) an April 21, 1994, article from the Spokesman-Review sports section quoting Kevin Twohig, the arena general manager.

■ RAP 9.11(a) allows for introduction of additional evidence on review if: the evidence is needed to resolve the issues; it could change the decision and it would have been difficult to present at trial; postjudgment motions in the trial would have been expensive; a new trial would be inadequate

or expensive; and deciding the case without the new evidence would be inequitable. Each of these criteria must be met. *Lombardo v. Pierson*, 121 Wn.2d 577, 584-85, 852 P.2d 308 (1993). None are met here.

Although the contract and the newspaper article were not available until after trial, the ballot documents were available and readily discoverable. The Schreiners made no effort to admit the documents at trial. Their motion is therefore denied. *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990). Further, the PFD's contractual duties are adequately presented in the record, and the Spokesman-Review article, offered to impeach Mr. Twohig's affidavit, does not contradict his testimony. The proffered evidence is not necessary to resolve the issues before this court. RAP 9.11(a).

### III

#### DISCUSSION

The Schreiners contend the court erred in granting summary judgment for the City because condemnation of their land is not authorized by Washington law. They argue the arena is being developed pursuant to the Public Facilities Districts statute, RCW 36.100, which does not authorize acquisition by condemnation. RCW 36.100.070.

Summary judgment is appropriate when reasonable minds could not differ as to the conclusions to be drawn from the evidence. *In re Estates of Hibbard*, 60 Wn. App. 252, 257, 803 P.2d 1312 (1991), *rev'd on other grounds*, 118 Wn.2d 737, 826 P.2d 690 (1992). In reviewing a summary judgment, we engage in the same inquiry as the trial court. RAP 9.12; *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993), *cert. denied*, 510 U.S. 1047, 126 L. Ed. 2d 664, 114 S. Ct. 697 (1994). The interpretation and application of statutes is a question of law. *Morales v. Westinghouse Hanford Co.*, 73 Wn. App. 367, 370, 869 P.2d 120 (1994). "[W]here no facts are in dispute and the only issue is a question of law, the standard of review is de novo." *Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993).

■■■ A municipality's exercise of eminent domain must be derived from an express legislative grant or necessarily implied. *In re Seattle*, 96 Wn.2d 616, 632, 638 P.2d 549 (1981). The statutory grant of the power to condemn must not be so strictly construed, however, as to thwart apparent legislative intent. *Seattle*, at 629. Washington's Eminent Domain by Cities statute, RCW 8.12, empowers cities to condemn property for "public use after just compensation . . .". RCW 8.12.030. A decree of public use and necessity to condemn may be entered only when (1) the use is really public, (2) the public interests require it, and (3) the property to be condemned is necessary for the purpose. *Seattle*, at 625. Whether an acquisition is actually for public use is a judicial question, although a legislative declaration is afforded great weight. *Des Moines v. Hemenway*, 73 Wn.2d 130, 138-39, 437 P.2d 171 (1968); *In re Port of Grays Harbor*, 30 Wn. App. 855, 860, 638 P.2d 633, *review denied*, 97 Wn.2d 1010 (1982). Whether a proposed acquisition is necessary for the public use is a legislative question. *Des Moines*, at 139.

The City created the Spokane PFD in order to determine the feasibility of a new multipurpose community center and to finance, construct and ultimately own and operate the facility. These purposes are specifically granted in RCW 36.100.030 as well as RCW 36.100.070, which allows the PFD to acquire and transfer property for a sports and entertainment facility "by lease, sublease, purchase, or sale". The Schreiners contend that since RCW 36.100.070 does not allow a PFD to acquire land by condemnation, the Spokane PFD should not be allowed to accomplish through the City what it cannot do on its own power.

The City, however, is specifically granted the power to condemn property necessary to develop a multipurpose community center in RCW 35.59.050. This section declares that the development of such a community center is a "strictly public purpose", and empowers the legislative body of a municipality to condemn lands "necessary to carry out the purposes authorized by this chapter". RCW 35.59.050. "A

declaration of necessity by a proper municipal authority . . . is conclusive in the absence of proof of actual fraud or such arbitrary and capricious conduct as would constitute constructive fraud." *Des Moines*, at 139. The Schreiners do not challenge the necessity of their land to the completion of the arena project. They challenge, however, the application of the Multi-Purpose Community Centers statute to these facts.

The Schreiners first contend the arena is not a multipurpose community center. This argument is without merit. The arena will serve as a facility for many of the purposes defined in the Multi-Purpose Community Centers statute: exhibition of arts and crafts; indoor sports and recreation (such as hockey, basketball and football); auditoria events (such as musical concerts, school graduations and circuses); and public hall events (such as retail trade shows and conventions). RCW 35.59.010.

The Schreiners next assert that even if the City has the authority to condemn property for a "public use" (RCW 8.12.030) or for a multipurpose community center (RCW 35.59.030), the City is *not* authorized to condemn property for an agency which may not condemn for itself. The Schreiners base their argument on the Washington Interlocal Cooperation Act, RCW 39.34, which provides: "Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking *which each public agency entering into the contract is authorized by law to perform*". (Italics ours.) RCW 39.34.080. Since the PFD is not authorized to acquire property by condemnation, the Schreiners argue, it may not contract with another public agency (the City) to perform such an undertaking.

The Schreiners misinterpret the roles of the City and the PFD. The City created the PFD to carry out an objective of the City, the County and their citizenry: to provide a new multipurpose arena for the community. Not only is the City an owner in interest of the new arena and lessor to the PFD for at least 20 years, but the City will operate the arena for 5 or

more years after it is completed. In order to promote development of the arena, the City agreed to acquire all the land needed and to lease the property to the PFD until the acquisition costs have been paid. In sum, the record indicates the City's role is more one of partner than agent in this arrangement.

■ The City's authority to condemn the Schreiners' property is authorized by both RCW 8.12 and RCW 35.59. The PFD is authorized under its separate statute to acquire property from the City by lease or purchase. RCW 36.100.070. The Schreiners contend *State ex rel. Wauconda Inv. Co. v. Superior Court*, 68 Wash. 660, 124 P. 127 (1912) supports their contention that an action undertaken pursuant to two statutes must be specifically authorized by both statutes. *Wauconda* is, however, distinguishable. There the court held that two unrelated statutes of "widely different" purposes could not act together to allow a general power of condemnation when neither statute by itself contained general condemnation authority. *Wauconda*, at 662-64. Here, however, the development of a multipurpose community center under RCW 35.59 and the acquisition of a sports and entertainment facility under RCW 36.100 represent a similar goal: provision of a facility for civic entertainment, cultural and educational events. The Multi-Purpose Community Centers statute as well as the eminent domain statute specifically provide general authority to condemn for this purpose. RCW 35.59.030; RCW 8.12.030.

Further, RCW 35.59.030 authorizes a municipality, either individually or *jointly* with a governmental agency such as the PFD, to acquire by condemnation multipurpose community centers. Although the PFD is not authorized to exercise eminent domain itself in the acquisition and construction of "sports and entertainment facilities" (RCW 36.100.030), the City is authorized to *join* with the PFD in acquiring — by condemnation or otherwise — those lands necessary to develop the arena. RCW 35.59.030.

In sum, the Spokane Veterans Memorial Arena is clearly a joint venture of the City, County and the PFD, undertaken for an undisputed public purpose, authorized under RCW 35.59 and RCW 36.100, and subject to the City's power of eminent domain. RCW 8.12.

## IV

### SANCTION FOR FRIVOLOUS APPEAL

The City contends this appeal is frivolous and requests attorney fees as a sanction under RAP 18.9.

RAP 18.9(a) provides, in part, that "[t]he appellate court . . . on motion of a party may order a party or counsel . . . who uses these rules for the purpose of delay . . . to pay terms or compensatory damages to any other party who has been harmed by the delay . . .". The compensatory damages may include payment of the moving party's attorney fees. *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 506, 716 P.2d 869 (1986).

An appeal is frivolous for the purposes of RAP 18.9 if, considering the record and resolving all doubts in favor of the appellant, the court is convinced the appeal presents no debatable issues on which reasonable minds could differ and it is so devoid of merit there is no possibility of reversal. *Boyles*, at 506-07; *Ramirez v. Dimond*, 70 Wn. App. 729, 734, 855 P.2d 338 (1993). An appeal is not frivolous, however, if the appellant can cite a case supporting its position. *Van Dinter v. Kennewick*, 64 Wn. App. 930, 937, 827 P.2d 329 (1992), *aff'd*, 121 Wn.2d 38, 846 P.2d 522 (1993).

The Schreiners' appeal, although not strongly supported by pertinent authority, involves interpretation of two statutes relating to the same subject: development of a multi-purpose sports and entertainment facility. RCW 35.59; RCW 36.100. When two statutes concerning the same general subject are construed together, their provisions must be interpreted so as to maintain the integrity of both. *State v. Elgin*, 118 Wn.2d 551, 557, 825 P.2d 314 (1992). As the Schreiners' reliance on *Wauconda* indicates, the issue of condemnation, unauthorized by RCW 36.100 but authorized by RCW 35.59,

is not totally "devoid of merit" in a joint venture pursuant to the two statutes. *Boyles*, at 507.

Accordingly, we affirm and deny the request for attorney fees.

MUNSON and SCHULTHEIS, JJ., concur.