

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-042-CV

CASCOTT, L.L.C.                                            APPELLANT

V.

CITY OF ARLINGTON                                        APPELLEE

----------

### FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

----------

### NO. 2-08-044-CV

CASCOTT, L.L.C.                                            APPELLANT

V.

CITY OF ARLINGTON                                          APPELLEE

----------

### FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

----------

**NO. 2-08-046-CV**

CASCOTT, L.L.C.                                                                    APPELLANT

V.

CITY OF ARLINGTON                                                          APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-106-CV**

CASCOTT, L.L.C.                                                                    APPELLANT

V.

CITY OF ARLINGTON                                                          APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

----------

**NO. 2-08-107-CV**

CLYDE L. GODFREY                                                            APPELLANT

V.

CITY OF ARLINGTON                                                          APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-108-CV**

CASCOTT, L.L.C.                                               APPELLANT

V.

CITY OF ARLINGTON                                     APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-109-CV**

JAMES A. SHOEMAKER                                 APPELLANT

V.

CITY OF ARLINGTON                                     APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-110-CV**

CASCOTT, L.L.C.                                               APPELLANT

V.

CITY OF ARLINGTON                                     APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

----------

**NO. 2-08-111-CV**

WALTER HUGH HERRINGTON                                                          APPELLANT

V.

CITY OF ARLINGTON                                                                    APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-113-CV**

CHARLES W. SCOTT AND                                                        APPELLANTS
ANITA R. SCOTT

V.

CITY OF ARLINGTON                                                                    APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY

----------

**NO. 2-08-134-CV**

CASCOTT, L.L.C.                                                                        APPELLANT

V.

CITY OF ARLINGTON                                                                    APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

4

**NO. 2-08-135-CV**

CHARLES W. SCOTT                                                    APPELLANTS
AND ANITA R. SCOTT

V.

CITY OF ARLINGTON                                                      APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

**NO. 2-08-136-CV**

CASCOTT, L.L.C.                                                        APPELLANT

V.

CITY OF ARLINGTON                                                      APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

**NO. 2-08-137-CV**

CLYDE L. GODFREY, AND                                              APPELLANTS
WAYNE COBLE AND NANCY COBLE,
TRUSTEEES OF THE WAYNE AND
NANCY COBLE LIVING TRUST

V.

CITY OF ARLINGTON                                                      APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

**NO. 2-08-138-CV**

CASCOTT, L.L.C.                                                       APPELLANT

V.

CITY OF ARLINGTON                                            APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

**NO. 2-08-139-CV**

WALTER HUGH HERRINGTON                               APPELLANT

V.

CITY OF ARLINGTON                                            APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

----------

**NO. 2-08-149-CV**

WALTER HUGH HERRINGTON                               APPELLANT

V.

CITY OF ARLINGTON                                            APPELLEE

-----------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

-----------

# OPINION

------------

In this consolidated appeal involving the City of Arlington's exercise of eminent domain to obtain land for a stadium venue project, seventeen property owners argue in a single issue that the trial court erred in granting a partial summary judgment that the City properly invoked its authority to condemn their properties. We affirm.

## I. Background

In 2004, the City and the Dallas Cowboys negotiated a "Master Agreement" detailing the basic terms by which the City would become the site of a new sports stadium complex. That August, the Arlington City Council passed Resolution No. 04-358, which designated the sports stadium project a "venue project" under Chapter 334 of the Local Government Code and established how the project would be financed. Section 334.021(a) of the Local Government Code allows for certain municipalities, including the City, to "provide for the planning, acquisition, establishment, development, construction, or renovation of a venue project."[1] The code defines "venue" to include "an arena, coliseum, stadium, or other type of area or facility . . . that is used or is planned for use for one or more professional or amateur sports

---

[1] Tex. Loc. Gov't Code Ann. § 334.021(a) (Vernon 2005).

events . . . ."[2] Resolution 04-358 declared that this venue project shall be "known as 'The Dallas Cowboys Complex Development Project.'"

After passage of Resolution No. 04-358, the City and the Cowboys executed the Master Agreement and obtained approval for the project from the Texas Comptroller.[3] The City Council then called a special election for November 2, 2004, to allow qualified voters to approve or disapprove the Dallas Cowboys Complex Development Project.[4] The proposition presented to the voters (1) described the purpose of the project as planning, acquisition, establishment, development, construction, and financing of a multi-purpose and multiple-function stadium project to be primarily used as the site for Cowboys home games, and (2) detailed the methods for financing the project, including imposition of additional City taxes on sales, vehicle rentals, hotel occupancy, and admission to and parking at venue project events. A majority of voters approved the project.

The City and the Cowboys then proceeded to negotiate various contracts contemplated by the Master Agreement, including a lease agreement (the

---

[2] *Id.* § 334.001(4)(A)(i).

[3] *See id.* § 334.021 (detailing procedure for developing venue project).

[4] *See id.* § 334.021(a)(3) (providing voter approval required for venue project).

8

"Lease") that sets out the terms of the Cowboys' future use of the stadium facilities.

In mid-2005, the City Council publicly identified the location for the project and passed resolutions authorizing City representatives to negotiate the purchases of property within the proposed location. While some of these negotiations were successful, the City and some property owners could not reach agreements on the City's purchase of their properties. The City then initiated condemnation proceedings in the county court at law against those property owners.[5]

The City conducted hearings before special commissioners who issued awards that were subsequently filed in the condemnation proceedings.[6] The property owners both objected to the amounts of the awards and filed pleas to the jurisdiction challenging the propriety of the City's exercise of eminent domain.

The property owners and the City then filed competing motions for summary judgment regarding the propriety of the City's exercise of eminent

---

[5] *See* Tex. Prop. Code Ann. § 21.001 (Vernon 2004) ("District courts and county courts at law have concurrent jurisdiction in eminent domain cases."); *id.* § 21.012 (Vernon Supp. 2008) (describing procedure for filing and required contents of condemnation petition).

[6] *See id.* § 21.015 (Vernon 2004) (describing responsibilities of special commissioners in condemnation proceedings).

domain. The trial court granted the City's motion and denied the property owners' motion and pleas.

The parties proceeded to trial on the property owners' objections to the amounts of the awards. After these trials, the trial court entered final judgments as to each property owner's compensation. The property owners each appealed, and this court consolidated the appeals.[7]

## II. Standard of Review

We review a summary judgment de novo.[8] A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[9] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[10]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both

---

[7]⬆ Our consolidation order stated that "[e]ach appeal shall continue to bear its respective cause number."

[8]⬆ *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005).

[9]⬆ *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[10]⬆ *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

10

parties' summary judgment evidence and determine all questions presented.[11] The reviewing court should render the judgment that the trial court should have rendered.[12]

### III. The Parties' Arguments

The property owners allege that the condemnation and the Lease are unconstitutional under section 17 of article I of the Texas Constitution because they result in the grant of an unlimited special privilege to a private entity and that the City's actions in condemning the property and executing the Lease were in violation of section 251.001(a)(5) of the Local Government Code because neither action was for a "public purpose."[13] Specifically, the property owners contend that the condemnation proceedings were not for a public purpose because "the sole reason [for the condemnation proceedings] was to lease [the property] to the Dallas Cowboys under terms that divested the City of its exclusive use and right to manage and control the condemned property for a specific period of at least thirty (30) years." They do not challenge the

---

[11] *See Valence Operating Co.*, 164 S.W.3d at 661.

[12] *See id*.

[13] *See* Tex. Loc. Gov't Code Ann. § 251.001(a)(5) (Vernon 2005) (stating that a municipality "may exercise the right of eminent domain for a public purpose to acquire public or private property . . . for any . . . municipal purpose the governing body considers advisable").

amount of the condemnation awards or assert any irregularity in the condemnation proceedings themselves.

In response, the City asserts that the property owners lack standing to challenge the constitutionality of the Lease. Alternatively, the City contends that the condemnation was for a public purpose—to acquire land to build a venue project for professional and amateur sporting events—and that the Lease is a lawful means of accomplishing this public purpose under chapter 334 of the Local Government Code, which expressly authorizes municipalities to acquire land for lease as part of a venue project.

## IV. Analysis

### A. Standing

Before we reach the merits of the parties' arguments, we must address the threshold issue raised by the City regarding standing.[14] Specifically, the City asserts that the property owners lack standing to challenge the legality of the Lease because they failed to show any particularized injury resulting from

---

[14] *See, e.g.*, *Seureau v. ExxonMobil Corp.*, No. 14-07-00176-CV, 2008 WL 4584961, at *2 (Tex. App.—Houston [14th Dist.] Oct. 16, 2008, no pet.) ("Because standing is a threshold issue that is implicit in the concept of subject-matter jurisdiction, we first address Father's standing."); *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 463 (Tex. App.—Corpus Christi 2008, pet. filed) (same).

the Lease that is distinct from the Lease's impact on the general public.[15] The property owners, however, are not merely challenging the constitutionality of the Lease; they also assert that it was unconstitutional for the City to condemn their property for the purpose of entering into the Lease. These two arguments are intertwined. Because the property owners' interest in the propriety of the proceedings condemning their property is unquestionably distinct from the general public's, we hold that the property owners do have standing to challenge the condemnations of their property based on the theory that the condemnations were for the purpose of leasing the property in violation of the Texas Constitution.[16]

## B.   Condemnation

The City's eminent domain power derives from a grant of power by the state legislature.[17]   Section 251.001(a)(5) of the Local Government Code provides broad authority to the City to condemn private property "for any . . .

---

[15] *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984); *Wyly v. Preservation Dallas*, 165 S.W.3d 460, 464 (Tex. App.—Dallas 2005, no pet.).

[16] *See Wyly*, 165 S.W.3d at 464 ("Generally, to establish standing, a plaintiff must establish that he has an individual interest in a conflict that is distinct from the interest of the general public, such that the defendant's actions have caused the plaintiff particular injury.").

[17] *See* Tex. Const. art. I § 17, interpretive commentary ("[T]he legislative branch may delegate the power to such agencies as it believes proper, subject, of course, to constitutional limitations.").

municipal purpose the governing body considers advisable."[18]  This power is

limited in Texas by the requirement in section 17 of article I of the Texas

Constitution that,

> No person's property shall be taken, damaged or destroyed for or applied to *public use* without adequate compensation being made, unless by the consent of such person . . . .[19]

"[I]f private property is taken for a purely private purpose, Section 17 is

violated."[20]

Whether a particular use of property constitutes a public use or purpose

is a question of law to be decided by the courts.[21]  In determining this question,

---

[18] Tex. Loc. Gov't Code Ann. § 251.001(a)(5).

[19] Tex. Const. art. I § 17 (emphasis added); *see Whittington v. City of Austin*, 174 S.W.3d 889, 896–97 (Tex. App.—Austin 2005, pet. denied).

[20] Tex. Const. art. I § 17, interpretive commentary; *see Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 245, 104 S. Ct. 2321, 2331 (1984) (explaining that purely private taking "executed for no reason other than to confer a private benefit on a particular private party" would be unconstitutional); *Phillips v. Naumann*, 154 Tex. 153, 158, 275 S.W.2d 464, 467 (1955) (holding unconstitutional order directing opening of roadway because would be "for the use of [one private person], and for no other use"); *see also City of Arlington v. Golddust Twins Realty Corp.*, 41 F.3d 960, 965 (5th Cir. 1994) (in case involving exercise of eminent domain to construct parking lot for new stadium for Texas Rangers baseball team, stating that property may be taken through eminent domain when "there results to the public some definite right or use in the business or undertaking to which the property is devoted") (internal quotation omitted).

[21] *See Maher v. Lasater*, 163 Tex. 356, 359, 354 S.W.2d 923, 924 (1962) ("[T]he ultimate question of whether a particular use is a public use is a judicial question to be decided by the courts."); *Whittington*, 174 S.W.3d at

14

however, courts give presumptive effect to legislative declarations that a statutorily authorized use of property is for a public purpose.[22] As the Supreme Court of Texas recently stated, "[T]he [legislative] determination of public necessity is presumptively correct, absent proof by the landowner of the [condemning authority's] fraud or proof that the condemning authority acted arbitrarily or capriciously."[23]

In this case, the City predicated the condemnation actions on chapter 334 of the Local Government Code, which authorizes the City to plan and develop a "sports and community venue project."[24] Section 334.044(a) declares that

_____

897. Public use and public purpose are essentially synonymous and are often used interchangeably in Texas condemnation law. *See Davis v. City of Lubbock*, 160 Tex. 38, 52, 326 S.W.2d 699, 709 (1959) ("The words 'public purposes' are no narrower than the words 'public use' . . . . Since we have held property is taken for public use, it follows that the expenditure of funds on the same project would be for public purposes.").

[22]▲ *See Housing Auth. of City of Dallas v. Higginbotham*, 135 Tex. 158, 168, 143 S.W.2d 79, 85 (1940) (holding that state legislature "validly confer[s]" eminent domain power where "the purposes [for condemnation] [a]re affected with a public interest").

[23]▲ *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 629 (Tex. 2008).

[24]▲ Tex. Local Gov't Code Ann. §§ 334.001(5) and 334.021(a). The Local Government Code defines a "sports and community venue project" to mean "a venue and related infrastructure that is planned, acquired, established, developed, constructed, or renovated under [chapter 334]." *Id.* According to the resolutions by which the City proceeded against each property owner, the City initiated the condemnation proceedings "to acquire . . . certain parcel[s] of land for the purpose of developing the Dallas Cowboys Public Venue Complex

15

"an approved venue project is owned, used, and held for *public purposes* by the municipality or county."[25]   Thus, in the absence of proof that the City acted fraudulently, arbitrarily, or capriciously, we must presume that the legislature's declaration in Chapter 334 that such a sports venue project is for a public purpose is correct.[26]

The property owners have presented no evidence that the City acted fraudulently, arbitrarily, or capriciously in condemning their property or executing the Lease.   Nevertheless, the property owners contend that the sports venue project in this case is not for a public purpose because the Lease grants the Dallas Cowboys "exclusive use and right to manage and control the condemned property for . . . at least thirty (30) years."

Unquestionably, the Dallas Cowboys stand to reap substantial benefits from the project, including the Lease.   The mere fact that a private actor will benefit from a taking of property for public use, however, does not transform

---

Project for use as a public venue."

[25] *Id.* § 334.044(a) (emphasis added).

[26] *See FKM P'ship*, 255 S.W.3d at 629; *see also Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 600 (Tex. 1979) ("In the absence of allegations that the condemnor acted arbitrarily or unjustly, the legislature's declaration that a specific exercise of eminent domain is for public use is conclusive.").

the purpose of the taking of the property, or the means used to implement that

purpose, from a public to a private use.[27]

The question here is not whether the Dallas Cowboys will benefit from

the Lease,[28] but whether the Lease furthers and promotes the public purpose

---

[27] *See Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 179, 309 S.W.2d 828, 833 (1958) (holding that fact that "[private] lessee may make a profit out of the venture . . . in itself does not make the use private rather than public"); *see also State v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 962 P.2d 543, 554 (Kan. 1998) (holding that "development of [an] auto race track facility and related projects are valid public purposes for which . . . eminent domain authority [may be] exercised"); *Libertarian Party of Wis. v. State*, 546 N.W.2d 424, 435 (Wis. 1996) ("While some private benefit [to a professional baseball team] will result [from construction and operation of professional baseball park facilities], the project is sufficiently public in nature to withstand constitutional challenge."); *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 72 (Tenn. Ct. App. 2001) ("Although . . . there will be some benefit accruing to [an] NBA franchise [by city's financing and construction of sports arena], if a public purpose is established, the fact that a private entity may receive some benefit from the legislation does not invalidate the established public purpose."); *Schreiner v. City of Spokane*, 874 P.2d 883, 887 (Wash. Ct. App. 1994) (holding that City was authorized to condemn, then lease, land for multi-purpose community center, which included sports arena). *See generally*, Aaron Mensh, *"Upon Further Review": Why a Sports Stadium Can Justify an Eminent Domain Taking*, 40 Conn. L. Rev. 1623, 1653 (2008) (identifying numerous public purposes for stadiums. *But see City of Springfield v. Dreison Invs., Inc.*, Nos. 19991318, 991230, 000014, 2000 WL 782971, at *1, *50 (Mass. Super. Ct., Feb. 25, 2000) (under unique Massachusetts law, rejecting use of eminent domain for purpose of construction of minor league baseball stadium).

[28] *See Goldstein v. Pataki*, 516 F.3d 50, 64 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964 (2008) (upholding use of eminent domain where condemnation, among other things, will "result in the construction of a publicly owned (albeit generously leased) stadium").

17

of the venue project for which the condemnation proceedings were instituted.[29]

We hold that it does. The City's summary judgment evidence conclusively establishes that the Lease will further the project's public purpose. We, therefore, hold that under the facts of this case, the Lease at issue does not serve a purely private purpose in violation of section 17 of article I of the Texas Constitution.[30]

## V. Conclusion

Because we hold that the City established, as a matter of law, that the condemnation proceedings and lease were for a public purpose, we affirm the trial court's judgments.

JOHN CAYCE
CHIEF JUSTICE

PANEL: CAYCE, C.J.; GARDNER and MCCOY, JJ.

---

[29] *See Coastal States*, 158 Tex. at 179, 309 S.W.2d at 833 (holding that public purpose is advanced when "the public has a direct, tangible and substantial interest and right in the undertaking"); *see also* Tex. Const. art. I § 17, interpretive commentary (noting that courts do not interfere with legislative declaration of public purpose where "the legislature could reasonably have considered the use a public one").

[30] The case on which the property owners primarily rely, *River Rd. Neighborhood Ass'n v. S. Tex. Sports*, 720 S.W.2d 551 (Tex. App.—San Antonio 1986, writ dism'd), is inapposite. It does not involve the exercise of eminent domain power by a municipality and, unlike the sports venue project at issue here, there was no indication in *River Road* that the stadium lease was part of a project that the legislature declared to be for public purpose. *See* Tex. Loc. Gov't Code Ann. § 334.044(a).

18

DELIVERED:  February 19, 2009